FILED
2019 Jul-09 PM 12:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VALERIE WILLIAMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 2:18-CV-01529-KOB |
| | ) |
| SELECT PORTFOLIO SERVICING, INC., | ) |
| and ROBERT DAWSON, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the court on "Defendant Select Portfolio Servicing, Inc.'s Motion for Judgment on the Pleadings and Incorporated Memorandum of Law." (Doc. 10). Plaintiff Valerie Williams sued Defendant SPS, the company that services her mortgage,[1] and Defendant Robert Dawson, a contractor, following a fire that destroyed much of her house. (Doc. 1-1). Ms. Williams asserts four claims: (1) breach of contract against SPS for withholding her insurance funds to rebuild her house; (2) conversion of the insurance funds against SPS; (3) conversion of the insurance funds against Mr. Dawson; and (4) breach of duty by various unknown defendants.

In this motion, SPS raises two grounds for judgment on the pleadings: (1) Ms. Williams does not plausibly state a claim for breach of contract, and (2) Ms. Williams's conversion claim fails as a matter of law. (Doc. 10). On March 7, 2019, Ms. Williams filed her response in

---

[1] SPS services Ms. Williams's mortgage on behalf of The Bank of New York Mellon, f/k/a The Bank of New York, as successor Trustee to JPMorgan Chase Bank, N.A., as Trustee for Bear Stearns Asset Backed Securities Trust 2006-SD1. (Doc. 10 at 1–2).

1

opposition to the motion for judgment on the pleadings. (Doc. 13). On March 14, 2019, SPS filed its reply brief. (Doc. 14). The motion is now ripe for review.

For the reasons stated below, the court will GRANT SPS's motion for judgment on the pleadings against Ms. Williams in its entirety.

**I. Background**

Ms. Williams owned a house on Westchester Avenue in Bessemer, Alabama. Ms. Williams had home insurance and a mortgage. At some point more than a year ago, the house was heavily damaged by fire.

Following the fire, Ms. Williams called her home insurance provider to file a claim. The insurer determined that the cost to be paid was $154,000.00. The insurer paid that amount to SPS, which was the company servicing Ms. Williams's mortgage. According to the complaint, SPS retained these funds, but agreed to release funds to Ms. Williams to pay for the necessary repairs to her house.

Ms. Williams hired Mr. Dawson to complete the repairs on her home. Mr. Dawson made certain draws against the funds, totaling a payment of $64,000.00. Ms. Williams alleges that Mr. Dawson "failed or refused to do the work in a good and workmanlike manner and according to the instructions and desires of the Plaintiff to rebuild a home similar and of [the] same quality [as] the one that was damaged by the fire." (Doc. 1-1 at 8). After six months of work, Mr. Dawson allegedly had completed only 10% of the work. Ms. Williams confronted Mr. Dawson about his lack of performance and quality, at which point he announced he was leaving.

Subsequently, Ms. Williams has attempted to hire additional contractors to complete the work, and after obtaining additional contractors, has requested that SPS release her funds. But, "for more than five straight months, [SPS] has failed or refused to release the funds for reasons

that are now unknown and unexplained." (Doc. 1-1 at 9). SPS asserts that Ms. Williams sought to receive the full balance of the insurance funds, instead of as progress payments as the work is completed. SPS contends that it has not released the funds to Ms. Williams because (1) she failed to provide a contract cancellation notice signed by Mr. Dawson, and (2) Mr. Dawson informed SPS that he was owed additional payment for the work he performed. (Doc. 10 at 3).

As a result of her inability to restore her house, Ms. Williams has been without her home for a year, and her insurance will not continue to cover her temporary room and board expenses.

Ms. Williams filed this suit on July 31, 2018 in the Circuit Court of Jefferson County, Alabama. She alleges four counts against Defendants. Count One alleges breach of contract against SPS for "holding funds wrongfully and contrary to their obligation under the contractual language between the parties and under their contractual obligation to exercise the contract and interpret the same in good faith." (Doc. 1-1 at 9). Count Two alleges conversion by SPS of the funds allegedly owed to Ms. Williams from the insurance company. Count Three alleges conversion against Mr. Dawson regarding the $64,000 he collected from SPS. Count Four alleges that "certain unknown Defendants" have "participated in the above breaches of duty to the Plaintiff and/or have conspired with one or more of the Defendants to cause the harm occasioned thereby." (*Id.*).

Defendants removed this action to federal court on September 18, 2018. (Doc. 1). SPS filed this motion for judgment on the pleadings as to the two counts asserted against it on February 21, 2019. (Doc. 10). Ms. Williams has not yet successfully served process on Mr. Dawson.

## II. Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough to not delay trial. *See* Fed. R. Civ. P. 12(c). A judgment on the pleadings is appropriate "when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). To determine whether the movant is entitled to a judgment on the pleadings, the court should "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

The court analyzes a Rule 12(c) motion for judgment on the pleadings the same way as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *See Dial v. City of Bessemer*, No. 2:14-cv-01297-RDP, 2016 WL 3054728, at *3 (N.D. Ala. May 31, 2016). ("A Rule 12(c) motion for judgment on the pleadings is analyzed the same as a Rule 12(b)(6) motion to dismiss."). "A motion to dismiss and a motion for judgment on the pleadings should not be granted unless 'the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) (quoting *Horsley v. Feldt*, 304 F.3d 1225, 1131 (11th Cir. 2002)). So, "to survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To be plausible on its face, the claim must contain enough facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678. Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Supreme Court has identified two working principles for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions even when "couched as . . . factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Thus, under prong one, the court determines the factual allegations that are well-pleaded and assumes their veracity, and then proceeds, under prong two, to determine the claim's plausibility given the well-pleaded facts. That task is "context-specific" and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.*

**III. Discussion**

SPS moves the court for a judgment on the pleadings because (1) Ms. Williams fails to state a plausible claim for breach of contract, and (2) Ms. Williams's conversion claim fails as a matter of law. The court will discuss each claim in turn.

5

### a. Count One: Breach of contract

Ms. Williams alleges that SPS breached its contract by wrongfully holding the insurance funds. To state a valid claim for breach of contract under Alabama law, the claimant must establish: (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011).

Ms. Williams has failed to allege the most basic element of a breach of contract claim: the existence of a valid contract. The only reference to a contract between Ms. Williams and SPS in her entire complaint is a conclusory statement under Count One: "The Plaintiff would aver that the Defendant SPS is holding funds wrongfully and contrary to their obligation under the contractual language between the parties and under their contractual obligation to exercise the contract and interpret the same in good faith." (Doc. 1-1 at 9). But Ms. Williams never alleged that she and SPS entered into an agreement, nor did she attach a copy of the agreement to her complaint. In fact, without the help of SPS's motion introducing the parties, the court could not even determine how SPS was at all related to Ms. Williams.

A mere reference to some unknown contract is insufficient to plead breach of contract. *See Boler v. Bank of America, N.A.*, No. 2:17-cv-303-JEO, 2017 WL 6555343, at *5 (N.D. Ala. Dec. 22, 2017) (holding that the plaintiff failed to state a claim for breach of contract when the plaintiff vaguely asserted a mortgage existed, but "[left] it to the Defendants and this Court to scour the letters and somehow decipher exactly what contract was breached and how."). So, the court cannot possibly determine if Ms. Williams plausibly alleged a breach of contract claim because she has not even alleged the existence of a contract, never mind what provision of the contract SPS allegedly breached.

Although SPS attached the mortgage contract in question to its motion for judgment on the pleadings, the court cannot consider the attachment and still treat this motion as a motion for judgment on the pleadings. (Doc. 10-1). Under Federal Rule of Civil Procedure 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." As explained above, Ms. Williams neither attached this contract to her complaint—the sole pleading in this case—nor alleged the existence of such a contract. So, to avoid considering this Rule 12(c) motion as a motion for summary judgment, this court will exclude the mortgage contract.

In her response brief, Ms. Williams makes arguments based upon this attachment. But when considering a motion for judgment on the pleadings, the court must only judge the pleadings, as suggested by the name of the motion. *See Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013) ("[T]o survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that it plausible on its face.'" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). And "a party cannot amend its pleading via brief in response to a dispositive motion." *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015).

Because Ms. Williams's complaint contained no allegations of a valid contract between her and SPS. So, the court must GRANT SPS's motion for judgment on the pleadings and must DISMISS Count One without prejudice.

### b. Count Two: Conversion

Ms. Williams alleges that SPS "converted funds owned by the Plaintiff herein and refused, after numerous request [sic] and lawful request [sic] to return the same." (Doc. 1-1 at

7

10). To establish a claim of conversion, a claimant must show: "(1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property, or (4) a wrongful detention or interference with another's property." *Kelly v. Conn. Mut. Life Ins.*, 628 So. 2d 454, 460 (Ala. 1993) (quoting *Gillis v. Benefit Trust Life Ins.*, 601 So. 2d 951, 952 (Ala. 1992)).

Under Alabama law, "[g]enerally an action will not lie for the conversion of money," unless "the money at issue is capable of identification." *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991). Historically, earmarked money such as "money in a bag or coins or notes which have been entrusted to defendants' care" was capable of identification for purposes of conversion. *Lewis v. Fowler*, 479 So. 2d 725, 726 (Ala. 1985) (quoting *Hunnicutt v. Higginbotham*, 35 So. 469, 470 (Ala. 1903)).

The evolution of our economic system has changed what "identifiable money" means for purposes of conversion. *See Lewis*, 479 So. 2d at 726. ("The requirement that there be 'earmarked money or specific money capable of identification' before there can be a conversion has been complicated as a result of the evolution of our economic system."). Money traceable to a special account would be sufficiently identifiable to support an action of conversion. *See Bailey*, 586 So. 2d at 899 ("[M]oney directly traceable to a special account is sufficiently identifiable to support an action for conversion."). On the other hand, "[m]oney paid by an insurance company to a hospital which had not been assigned by the plaintiff has been determined as a matter of law not to be specific property that would support an action of conversion." *Id.* (citing *Humana of Ala., Inc. v. Rice*, 380 So. 2d 862 (Ala. Civ. App. 1979), *cert. denied*, 380 So. 2d 865 (Ala. 1980)).

Here, Ms. Williams has only alleged that SPS "has converted funds owned by the Plaintiff." (Doc. 1-1 at 10). The court assumes Ms. Williams refers to the $154,000.00—or a portion thereof, as payments have been made to Mr. Dawson—paid to SPS by the insurer, although she alleges no other identification or earmarking of funds. In *Boler v. Bank of America, N.A.*, a colleague of the undersigned held that even alleging a sum certain, represented by an insurance check, was insufficient to establish that the money was capable of identification because the sum certain refers to an amount, but not to the specific money itself. No. 2:17-cv-303-JEO, 2017 WL 6555343, at *6 (N.D. Ala. Dec. 22, 2017).

As noted by the Eleventh Circuit, Alabama cases "held that an action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010). The Supreme Court of Alabama noted that an "obligation to return the identical money" must exist, not merely an obligation to repay a debtor or creditor. *Lewis*, 479 So. 2d at 727. But Ms. Williams makes no allegation that the money at issue is identifiable in this way, such as being held in an escrow account.

Instead, Ms. Williams relies heavily on *Pike v. Reed* to establish that an insurance check constitutes identifiable money that has been earmarked. 47 So. 3d 253 (Ala. Civ. App. 2009). First, Ms. Williams does not allege that an insurance check ever existed, only that SPS received money from the insurance company. Second, Ms. Williams's argument regarding *Pike* ignores the unique facts of the case. In *Pike*, the defendant sought summary judgment on the conversion claim because an insurance check had been deposited with the defendant and comingled with other funds, making the check no longer identifiable. *Id.* at 257. The plaintiff contended that the conversion did not happen once the funds were comingled, but when the check was deposited by

9

the defendant into the estate without authority. *Id.* So, the court held that the check itself constituted specific money because the conversion occurred at the point of depositing—*not* after the funds were comingled. *Id.* at 260.

In the case, Ms. Williams does not contend that the check itself—which she never even alleges its existence—was converted. Instead, she alleges that the conversion occurred at some point after the check was deposited and some of the funds were withdrawn. So, while a check does indeed constitute identifiable money, Ms. Williams has not alleged that any identifiable money was converted in her case.

To the extent that Ms. Williams relies upon the mortgage agreement to argue that her funds were earmarked, the court reiterates that it cannot consider the mortgage agreement pursuant to Rule 12(d) because the agreement was not alleged in or made part of the complaint.

Because Ms. Williams failed to allege that SPS converted identifiable money, the court must DISMISS Count Two.

## IV. Conclusion

For the reasons discussed above, the court will GRANT Defendant SPS's motion for judgment on the pleadings against Ms. Williams in its entirety. (Doc. 10). Because no count remains against SPS, the court will DISMISS WITHOUT PREJUDICE Defendant SPS from this suit. The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 9th day of July, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE